UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HEMANT SACHDEV,                                    :

                      Plaintiff,               :               15 Civ. 7114 (AJP)

          -against-                          :               **OPINION & ORDER**

DR. RINA SINGH,                                    :

                  Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

               Plaintiff Hemant Sachdev brings this action against Dr. Rina Singh, his former wife, alleging that she violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and intentionally interfered with his actual and prospective contractual relations in violation of New York law.  (Dkt. No. 24: Am. Compl. ¶¶ 1, 82-103.)  Presently before the Court is Singh's summary judgment motion as to Sachdev's CFAA losses (Dkt. No. 41), and Singh's motion to dismiss all of Sachdev's claims (Dkt. No. 29).   The parties have consented to decision by a United States Magistrate Judge pursuant to 18 U.S.C. § 636(c).  (Dkt. No. 19.)  For the reasons set forth below, Singh's motion to dismiss (Dkt. No. 29) is <u>GRANTED</u> as to Sachdev's CFAA claim under 18 U.S.C. § 1030(a)(4) and his tortious interference with prospective contractual relations claim as to Peter Metcalf, and in all other respects Singh's motions (Dkt. Nos. 29 & 41) are <u>DENIED</u>.

## FACTS

### Background

Hemant Sachdev is a non-resident Indian who resides in Dubai, United Arab Emirates, and conducts business in the United States and worldwide.  (Dkt. No. 24: Am. Compl. ¶ 2.)  Sachdev is from a prominent Indian family and his sister is married to the son of India's former Deputy Prime Minister.  (Id. ¶ 21.)

Singh is a United States citizen who resides in New York City.  (Am. Compl. ¶ 3.)  Singh has held various professional positions in her career, most relevantly a management role at Veracity, an Indian company that performs due diligence for companies and individuals, performs background checks, and works with private investigators.  (Id. ¶ 18.)

Sachdev and Singh were married in 2007, and separated on November 4, 2010.  (Am. Compl. ¶ 12.)  Following their separation, Sachdev filed for divorce in India, and Singh filed an application for maintenance.  (Id. ¶¶ 13-14.)  The parties' divorce proceedings are ongoing.  (Id. ¶ 15.)  Singh also filed a criminal case against Sachdev and his family which was dismissed by the Indian court.  (Id. ¶¶ 22-23.)  Singh filed an additional complaint against Sachdev under India's Protection Against Domestic Violence Act (naming Sachdev's family as collaborators), which also was dismissed by the Indian court.  (Id. ¶¶ 26-29.)

Sachdev's present complaint alleges that Singh's non-meritorious complaints in various forums in India are part of a post-marital "personal vendetta" intended to harass Sachdev and his family, damage his reputation and extort money from him.  (Am. Compl. ¶¶ 20, 29.)

### The Complaint's Allegations as to Sachdev's CFAA Claim

Prior to approximately June 21, 2011, Sachdev used AOL as his internet service provider.  (Dkt. No. 24: Am. Compl. ¶ 34.)  Through his AOL email account, Sachdev maintained

information electronically on protected computers used for interstate and international business and personal purposes.  (Id. ¶ 34.)  On June 21, 2011, a sender identified as "Cr1m1nal Hack3r" (with an email address in India) emailed Sachdev's AOL email account, stating that Cr1m1nal Hack3r worked for detective agencies and had turned down a job offer to hack Sachdev.  (Id. ¶¶ 30-31 & Ex. A: 6/21/11 Email.)  "[O]nly Dr. Singh could know some of the detailed personal and business information" included in the email to prove Cr1m1nal Hack3r's bona fides, such as the names of Sachdev's dogs, banker and favorite hotel.  (Am. Compl. ¶¶ 31-32.)  Cr1m1nal Hack3r also noted that Sachdev had "two court cases pending in Delhi" which could be the "motto" (motive) for the hacking.  (Id. ¶ 31 & 6/21/11 Email.)  After Sachdev received Cr1m1nal Hack3r's email, he no longer trusted that his AOL email account was private, and has used it only rarely.  (Id. ¶ 35.)  On June 22, 2011, an expert hired by Sachdev discovered thousands of attempts to hack Sachdev's computer.  (Id. ¶¶ 36-37 & Ex. B: 6/22/11 Computer Log.)

Sachdev alleges that by hacking into his computer and email accounts Singh gained access to numerous of Sachdev's personal documents and filed them in Indian courts in connection with various ongoing proceedings.  (Am. Compl. ¶¶ 39-61.)  In connection with their divorce proceedings, for example, Singh filed a November 19, 2010 email and photograph attachment from Sachdev's AOL email account.  (Id. ¶ 39.)  Singh was neither the sender nor a recipient of the email, and after Sachdev reviewed the court filing he realized that Singh or her agents had successfully hacked his AOL email.  (Am. Compl. ¶¶ 40, 43.)  The complaint is silent as to the date of that filing.  (See generally id. ¶¶ 39-43.)

In 2015, Sachdev maintained a business email account at difze.com and a personal gmail email account.  (Am. Compl. ¶¶ 44-45.)  Sachdev was the sole authorized user on those accounts, and his passwords were private.  (Id.)  At his gmail account, Sachdev received an

engagement letter from a consulting firm hired to assist with his application for residency in Malta. (Id. ¶ 48.)   Sachdev executed the letter upon receipt and his assistant scanned and sent it to Sachdev's business (difze) email account.  (Id. ¶ 50.)  Sachdev forwarded the email to his gmail account and emailed it back to the consulting firm.  (Id.)  Sachdev alleges that he did not send the engagement letter to anyone except himself, his assistant and the consulting firm, and that it was saved only on his and his assistant's computers.  (Id. ¶ 52.)  Nevertheless, in August 2015, Singh filed a copy of the engagement letter in the Indian court.  (Id. ¶¶ 48, 51.)  Sachdev alleges that Singh or her agents obtained the letter by hacking his gmail or difze.com account.  (Id. ¶ 54.)

On August 15, 2015, Singh made another filing in the Indian court which included a list of companies allegedly owned by Sachdev.  (Am. Compl. ¶ 55.)  One of the companies listed, K2 Real Investments, was formed by Sachdev's agents as an "offshore" company in Mauritus, and Sachdev did not make any investments or public filings pertaining to K2.  (Id. ¶ 55.)  Once again, the only documents connecting Sachdev to K2 were saved on Sachdev's computers and in his email accounts.  (Id. ¶ 56.)

Around the same time, Sachdev was considering making a private investment, which he discussed with investment banker Ranu Vohra.  (Am. Compl. ¶ 57.) Sachdev communicated with Vohra through his difze.com account, and always used the code name "'Project Horse'" to refer to his potential investment.  (Id.)  When Vohra contacted prospective partners for Project Horse, they were required to sign non-disclosure agreements.  (Id.)  In mid-August 2015, Singh contacted Vohra, mentioned Project Horse and made disparaging remarks about Sachdev, including that he had violated laws and regulations in prior business dealings.  (Id. ¶ 58.)

**The Complaint's Allegations as to Sachdev's Claims for Interference with Prospective and Actual Contractual Relations**

The amended complaint alleges that Singh contacted numerous of Sachdev's business associates, asked them questions about their finances and work with Sachdev, threatened legal action if they failed to respond, and implied that Sachdev was involved in criminal activity.  (Dkt. No. 24: Am. Compl. ¶¶ 62-81.)

On August 22, 2015, Singh emailed Sachdev's attorney, Bernard Welten, to request information about Sachdev's businesses and assets.  (Am. Compl. ¶ 62 & Ex. F: 8/22/15 Email.) Singh's email asserted that "failure to [respond] will result in a court subpoena for the same information"  (8/22/15 Email at 2), a threat Singh did not have authority to make (Am. Compl. ¶ 65). Singh's email attached questions for Sachdev's colleagues Claudia Assandri, Patrick Mast, Beat Muller and Abhijeet Singh.  (8/22/15 Email at 3.)  Sachdev alleges that Singh's email caused Muller, Assandri and other employees at Sachdev's companies to terminate their employment contracts with Sachdev or resign (Am. Compl. ¶¶ 66, 92, 94), which in turn caused Sachdev reputational damage and monetary damages in excess of $75,000 "by preventing him from operating his business as normal, obtaining business, revenues and profits, requiring him to rehire personnel, depriving him of resources and damaging future business relations" (id. ¶ 98).

Singh emailed Sachdev's business associate Peter Metcalf, the CEO of Black Diamond Equipment Ltd., seeking business and financial information, and asking "[h]ave you knowingly or unknowingly abetted Hemant Sachdev in any violation of Indian laws including but not limited to fraud, corruption, tax evasion, foreign exchange malfeasance, money laundering, etc.?"  (Am. Compl. ¶¶ 74, 79 & Ex. H: 8/22/15 Ltr.)  Sachdev alleges that Singh's email implied that he had engaged in criminal and deceptive acts which might put Black Diamond at risk.  (Am.

Compl. ¶ 80.)  On August 27, 2015, Singh sent a similar email to another of Sachdev's business associates, Vipul Garg.  (Id. ¶¶ 68-72 & Ex. G: 8/27/15 Email.)  Singh's email indicated that Sachdev was the defendant in a criminal lawsuit, and sought answers to questions about Garg and Sachdev's business enterprises.  (8/27/15 Email at 2.)  Singh's emails disrupted business relations between Sachdev, Garg "and others."  (Am. Compl. ¶¶ 72, 102-03.)

**Procedural History**

Sachdev filed the original complaint on September 10, 2015.  (Dkt. Nos. 2 & 8.)  The Court denied Singh's motion to dismiss without prejudice, to allow Sachdev to amend the complaint. (Dkt. No. 23.)  On November 12, 2015, Sachdev filed the amended complaint.  (Dkt. No. 24.)  On December 14, 2015, Singh moved to dismiss the amended complaint.  (Dkt. No. 29.)  On January 13, 2016, the Court ordered Sachdev to produce "detailed documentary proof" that his expenses satisfied CFAA's $5,000 loss threshold.  (Dkt. No. 36.)  In light of Sachdev's January 25, 2016 submissions (Dkt. No. 39), the Court permitted Singh to make an early partial summary judgment motion limited to the issue of Sachdev's CFAA losses.  (Dkt. No. 40.)  Singh filed her summary judgment motion on February 2, 2016.  (Dkt. No. 41.)  The Court held oral argument on the motions on February 25, 2016.  (Dkt. No. 51.)

**Evidentiary Support for Sachdev's CFAA $5,000 Loss Threshold Claim**

In response to the Court's January 13, 2016 Order (Dkt. No. 36) that Sachdev produce "detailed documentary proof" that his expenses satisfied CFAA's $5,000 loss threshold, Sachdev submitted the following:

1)     An August 18, 2015 invoice from Nikhil System & Solution for 28,500 Indian rupees for "Firewall Installation Charges," and an August 18, 2015 invoice from Nikhil System & Solution for 210,000 Indian rupees for "Dell Sonic wall NSA 250M wireless-N Total Secure Firewall."  (Dkt. No. 39:

Notice of Compliance: Sachdev Aff. Ex. A.)  According to Sachdev, those invoices amount to $3,656.66.  (Notice of Compliance: Sachdev Aff. ¶ 9.)

2)    A November 12, 2015 invoice from Apple for a Macbook, for 6,899 AED, which Sachdev asserts converts to $1,878.22.  (Notice of Compliance: Sachdev Aff. ¶ 14 & Ex. B at 1.)

3)    A November 6, 2015 invoice from Apple for an iPad, for 2,799 AED, which Sachdev asserts converts to $762.02.  (Notice of Compliance: Sachdev Aff. ¶ 15 & Ex. B at 2.)

4)    An affidavit from Craig Cantwell, a computer forensic expert and president and founder of SVDFL Digital Forensics laboratories.  (Notice of Compliance: Cantwell Aff. ¶¶ 1-2.)  On January 21, 2016, Cantwell was retained by Sachdev for $2,500 to analyze the MacBook computer Sachdev used in 2015.  (Cantwell Aff. ¶¶ 6, 8.)  "Given the cost, delay and risks associated with shipping the computer," Cantwell recommended that Sachdev purchase a "new MacBook and iPad so as to have and use virgin devices he could confidently believe were free of malware and viruses." (Cantwell Aff. ¶ 14.)

Sachdev asserts that he hired Nikhil System & Solution to install the Dell Sonic wall NSA 250M wireless-N Total Secure Firewall to block further hacking and "prevent malware that may have been installed . . . from transmitting [his] information."  (Dkt. No. 46-4: Sachdev Aff. ¶¶ 38-39.)  While Nikhil System & Solution billed Sachdev's company, Chogori India Retail Ltd., for the cost of the installation and firewall system, Sachdev personally paid the $3,656.66.  (Sachdev Aff. ¶ 40.)  Sachdev's computer forensic expert, Craig Cantwell, states that the firewall was a "prudent and necessary step . . . to respond to and prevent continued damage from the hacking." (Dkt. No. 46-3: Cantwell Aff. ¶ 15.)  Cantwell further states that a firewall like Sachdev's not only prevents damage by blocking future hacking attempts, but also can serve "to prevent or mitigate continuing damage from prior hacks where such hacks had placed in a system certain malware that steals information from a hacked computer."  (Cantwell Aff. ¶ 19.)  In such a case, "the firewall can serve to block stolen information from leaving the impacted computer."  (Id.)

Sachdev further asserts that prior to the hacking, he used a "synchronized" Mac computer and iPad to access "private email servers at Gmail and Microsoft for both personal and business purposes." (Sachdev Aff. ¶¶ 45-46.)  Sachdev's legal counsel spoke to computer expert Cantwell about investigating Sachdev's computer and iPad.  (Id. ¶ 48.)  For Cantwell to examine the devices, it would have been necessary for Sachdev to ship them to Vermont, thereby leaving him without a computer for the duration of the examination.  (Id. ¶ 49.)  Sachdev asserts that due to this delay and on Cantwell's November 2015 recommendation, he purchased a new computer and iPad, "as an expedient way to mitigate damages and allow [him] to immediately use computing devices without fear that any malware . . . placed on [his] previous devices" would allow "continued access" to his computers.  (Sachdev Aff. ¶ 49.)

## II.    SUMMARY JUDGMENT IS DENIED AS TO SACHDEV'S CFAA LOSSES

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 553 F. App'x 13, 14 (2d Cir. 2014); Connolly v. Calvanese, 515 F. App'x 62, 62 (2d Cir. 2013); Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 54 (2d Cir. 2013); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd.

P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53; Dolan v. Cassella, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)). Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[1/] The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source

---

[1/]    See also, e.g., Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., 552 F. App'x 47, 49 (2d Cir. 2014); Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. <u>See</u>, <u>e.g.</u>, <u>Donahue</u> v. <u>Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. <u>See</u>, <u>e.g.</u>, <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> at 248, 106 S. Ct. at 2510 (citations omitted); <u>see also</u>, <u>e.g.</u>, <u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d at 11-12.

**B.    Sachdev Has Presented Sufficient Evidence that His Losses Meet CFAA's Threshold**

A plaintiff may only bring a civil action under CFAA if the defendant's wrongful conduct causes one of the enumerated types of "damage or loss" set forth in subclause (c)(4)(A)(i) of the statute.   18 U.S.C. § 1030(g).   Under the only relevant subclause, 18 U.S.C. § 1030(c)(4)(A)(i)(I), loss must be to "1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  Loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11). Recoverable losses under CFAA include those costs "necessary to assess the damage caused to the

plaintiff's computer system or to resecure the system in the wake of a hacking attack." Tyco Int'l Inc. v. John Does, 01 Civ. 3856, 2003 WL 21638205 at *1 (S.D.N.Y. July 11, 2003); see also, e.g., Ipreo Holdings LLC v. Thomson Reuters Corp., 09 Civ. 8099, 2011 WL 855872 at *7 (S.D.N.Y. Mar. 8, 2011) (a plaintiff can meet the loss requirement through "damage assessment and/or remedial measures, even without pleading actual damage"); Modis, Inc. v. Bardelli, 531 F. Supp. 2d 314, 320 (D. Conn. 2008) ("'[T]he costs of responding to the offense' are recoverable regardless of whether there is an interruption in service, and federal courts have sustained actions based on allegations of costs to investigate and take remedial steps in response to a defendant's misappropriation of data."); Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) ("a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted" is recoverable), aff'd, 161 F. App'x 559 (2d Cir. 2006).

Singh argues that Sachdev fails to satisfy CFAA's $5,000 loss threshold.  (Dkt. No. 42: Singh CFAA Br.)  Relying on In re DoubleClick Inc. Privacy Litig., 154 F. Supp. 2d 497 (S.D.N.Y. 2001), Singh first contends that 18 U.S.C. § 1030(c)(4)(A)(I) requires Sachdev to show that he suffered more than $5,000 of loss to a "'particular computer.'" Singh misreads the holding of that case.  Sachdev need not demonstrate that a "particular computer" suffered $5,000 of damage, but rather must show that a single act of prohibited intrusion caused at least $5,000 of damage.  In re DoubleClick Inc. Privacy Litig., 154 F. Supp. 2d at 523-25 (CFAA "allows aggregation of damage over victims and time for a single act").  Singh does not contend that Sachdev failed to allege damage stemming from a single act of prohibited intrusion.

Singh further argues that losses incurred by Chogori India Retail Ltd., the entity invoiced for the firewall and installation, do not count as "personal 'loss' pursuant to the CFAA."

(Singh CFAA Br. at 7-8.)  This argument ignores that CFAA permits the aggregation of loss over multiple persons, and that CFAA's definition of "person" includes "any individual, firm, corporation, . . . or legal or other entity."  18 U.S.C. § 1030(e)(12).  Moreover, Sachdev asserts that although the invoice for the firewall and its installation went to his company, he personally paid the invoice.  (See page 7 above.)  On a summary judgment motion "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); see also cases cited at page 9 n.1 above.

Singh additionally argues that the cost of the firewall and firewall installation does not qualify as a cognizable loss under CFAA, because it was not an expense "that sought to identify and address damage . . . that had already taken place."  (Singh CFAA Br. at 9-11.)  This argument is contested by Sachdev's expert, Craig Cantwell, who asserts that installing the firewall was a "prudent and necessary step" to respond to the hacking, since a firewall like Sachdev's can "mitigate continuing damage from prior hacks" by preventing previously installed malware from transmitting information.  (See page 7 above.)  Sachdev affirms that his intent in installing the firewall was in part "to prevent malware that may have been installed . . . from transmitting [his] information"–i.e., to remedy the effect of a prior intrusion.  (See page 7 above.)  At this stage of the litigation, Singh has not had the opportunity to depose Cantwell or submit her own expert report.  On this record, a reasonable juror could conclude from Cantwell and Sachdev's assertions that the firewall installation was a measure taken to "resecure the system in the wake of a hacking attack," rather than a prophylactic "precaution taken against future intrusions" as Singh contends.  (Singh CFAA Br. at 10-11.)  Accordingly, the cost of the firewall, regardless of who was invoiced, may contribute to Sachdev's cognizable losses.

The evidence before the Court demonstrates that Sachdev incurred losses of $3,656.66 to resecure his computer system with a firewall, and, at a minimum, $1,878.22 for a replacement computer to accommodate for the interruption in service caused by his concerns about potential malware.  (See pages 6-7 above.)[2/]  Based on these expenses alone, Sachdev has presented sufficient evidence to raise a genuine issue of material fact as to whether his aggregate losses exceed $5,000.[3/]  Accordingly, summary judgment is denied on the issue of whether Sachdev has satisfied CFAA's loss threshold.

## III.   SINGH'S MOTION TO DISMISS

### A.   Legal Standards Governing Motions to Dismiss

#### 1.   The Standard Pursuant to Fed. R. Civ. P. 12(b)(6)

##### a.   The Twombly-Iqbal "Plausibility" Standard

In the Twombly and Iqbal decisions in 2007 and 2009, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers "labels and conclusions"

---

[2/]   As Sachdev incurred these expenses by the date of the Amended Complaint, Singh's argument that the Court does not have subject matter jurisdiction over Sachdev's CFAA claim (Singh CFAA Br. at 4-5; Dkt. No. 47: Singh CFAA Reply Br. at 1-2, 4-6) due to the "time of filing" rule is without merit.  See, e.g., Forziano v. Indep. Grp. Home Living Program, Inc., 613 F. App'x 15, 17 (2d Cir. 2015); Jean-Laurent v. Wilkerson, 461 F. App'x 18, 23 (2d Cir. 2012) ("'[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.'").  While Sachdev's original complaint may have been deficient and subject to Rule 11 sanctions, Singh did not file a Rule 11 motion.

[3/]   Accordingly, the Court need not consider whether Sachdev's January 21, 2016 retention of Cantwell also is a cognizable loss.  (See Singh CFAA Br. at 11-13.)

or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

      To survive a motion to dismiss, <u>a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."</u> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

      Two working principles underlie our decision in <u>Twombly</u>. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. <u>Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice</u>. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. <u>Second, only a complaint that states a plausible claim for relief survives a motion to dismiss</u>. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

      In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added, quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007) (retiring the <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")).[4/]

Even after <u>Twombly</u> and <u>Iqbal</u>, the Court's role in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Bison Capital Corp.</u> v. <u>ATP Oil & Gas Corp.</u>, 10 Civ. 0714, 2010 WL 2697121 at *5 (S.D.N.Y. June 24, 2010) (Peck, M.J.) (quotations omitted), <u>R. & R. adopted</u>, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010).[5/]

## 2.     Consideration of Documents Attached to the Amended Complaint

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." <u>Vassilatos</u> v. <u>Ceram Tech Int'l, Ltd.</u>, 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y.

---

[4/]     <u>Accord</u>, <u>e.g.</u>, <u>Affinity LLC</u> v. <u>GfK Mediamark Research & Intelligence, LLC</u>, 547 F. App'x 54, 55-56 (2d Cir. 2013); <u>Massena</u> v. <u>Bronstein</u>, 545 F. App'x 53, 55 (2d Cir. 2013); <u>Cancel</u> v. <u>Home Depot</u>, 488 F. App'x 520, 520 (2d Cir. 2012); <u>Spataro</u> v. <u>Glenwood Supply</u>, 479 F. App'x 403, 404 (2d Cir. 2012); <u>Starr</u> v. <u>Sony BMG Music Entm't</u>, 592 F.3d 314, 321 (2d Cir. 2010), <u>cert. denied</u>, 562 U.S. 1168, 131 S. Ct. 901 (2011); <u>Harris</u> v. <u>Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009); <u>Scerba</u> v. <u>Allied Pilots Ass'n</u>, 13 Civ. 3694, 2013 WL 6481583 at *6-7 (S.D.N.Y. Dec. 10, 2013) (Peck, M.J.), <u>aff'd</u>, 589 F. App'x 554 (2d Cir. 2014), <u>cert. denied</u>, 135 S. Ct. 2313 (2015); <u>Florio</u> v. <u>Canty</u>, 954 F. Supp. 2d 227, 229-30 (S.D.N.Y. 2013) (Peck, M.J.) (citing cases); <u>Mahoney</u> v. <u>Sony Music Entm't</u>, 12 Civ. 5045, 2013 WL 491526 at *4-5 (S.D.N.Y. Feb. 11, 2013) (Peck, M.J.); <u>Toto, Inc.</u> v. <u>Sony Music Entm't</u>, 12 Civ. 1434, 2012 WL 6136365 at *5 (S.D.N.Y. Dec. 11, 2012) (Peck, M.J.), <u>R. & R. adopted</u>, 2013 WL 163826 (S.D.N.Y. Jan. 15, 2013).

[5/]     <u>Accord</u>, <u>e.g.</u>, <u>Florio</u> v. <u>Canty</u>, 954 F. Supp. 2d at 230-31; <u>Tasini</u> v. <u>AOL, Inc.</u>, 851 F. Supp. 2d 734, 737 (S.D.N.Y.) ("The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"), <u>aff'd</u>, 505 F. App'x 45 (2d Cir. 2012); <u>Saunders</u> v. <u>Coughlin</u>, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting <u>Geisler</u> v. <u>Petrocelli</u>, 616 F.2d 636, 639 (2d Cir. 1980)).

May 19, 1993) (citing <u>Kopec</u> v. <u>Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991)).[6/]  The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  <u>E.g.</u>, <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007); <u>Chambers</u> v. <u>Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); <u>Rothman</u> v. <u>Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . .").[7/]

---

[6/]    <u>Accord</u>, <u>e.g.</u>, <u>Grant</u> v. <u>Cty. of Erie</u>, 542 F. App'x 21, 23 & n.1 (2d Cir. 2013); <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006); <u>Aniero Concrete Co.</u> v. <u>N.Y.C. Constr. Auth.</u>, 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); <u>Six W. Retail Acquisition, Inc.</u> v. <u>Sony Theatre Mgmt. Corp.</u>, 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  <u>See</u> Fed. R. Civ. P. 12(b); <u>Friedl</u> v. <u>City of N.Y.</u>, 210 F.3d 79, 83 (2d Cir. 2000); <u>Fonte</u> v. <u>Bd. of Managers of Cont'l Towers Condo.</u>, 848 F.2d 24, 25 (2d Cir. 1988).

[7/]    <u>See also</u>, <u>e.g.</u>, <u>Yak</u> v. <u>Bank Brussels Lambert</u>, 252 F.3d 127, 130 (2d Cir. 2001) (citing <u>Cortec Indus., Inc.</u> v. <u>Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991), <u>cert. denied</u>, 503 U.S. 960, 112 S. Ct. 1561 (1992)); <u>Paulemon</u> v. <u>Tobin</u>, 30 F.3d 307, 308-09 (2d Cir. 1994); <u>Brass</u> v. <u>Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993); <u>Florio</u> v. <u>Canty</u>, 954 F. Supp. 2d 227, 231-32 (S.D.N.Y. 2013) (Peck, M.J.); <u>In re Lehman Bros. Sec. & ERISA Litig.</u>, 903 F. Supp. 2d 152, 168-69 (S.D.N.Y. 2012) (quoting <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d at 98); <u>Drum Major Music Entm't Inc.</u> v. <u>Young Money Entm't, LLC</u>, 11 Civ. 1980, 2012 WL 423350 at *2 (S.D.N.Y. Feb. 7, 2012); <u>Maniolos</u> v. <u>United States</u>, 741 F. Supp. 2d 555, 560 (S.D.N.Y. 2010) (Peck, M.J.), <u>aff'd</u>, 469 F. App'x 56 (2d Cir. (continued...)

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d at 134 (citations omitted).  In this case, the documents that Sachdev incorporated by reference in the amended complaint may be considered on the motion to dismiss, subject to the Faulkner v. Beer proviso.

**B.      Singh's Motion to Dismiss Sachdev's CFAA Claims is Denied, Except as to his Claim Under Section 1030(a)(4)**

The amended complaint alleges violations of CFAA subsections 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(B) and 1030(a)(5)(C).  (Dkt. No. 24: Am. Compl. ¶¶ 84-87.)  These subsections provide a cause of action against a person or entity who:

> (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . (C) information from any protected computer;
>
> (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value [in excess of $5,000];
>
> (5)(B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
>
> (5)(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030(a).

---

[7/]        (...continued)
2012).

1.   **Singh Fails to Establish that Sachdev's Claim as to the AOL Email is Untimely**

Sachdev filed his verified complaint on September 16, 2015. (Dkt. No. 8; see page 6 above.)  Accordingly, any CFAA violation discovered prior to September 16, 2013 is barred by CFAA's two year statute of limitations.  See 18 U.S.C. § 1030(g) ("No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.").  Singh contends that Sachdev's CFAA claim as to the AOL email accrued no later than June 22, 2011, and thus is time-barred.  (Dkt. No. 33: Singh Br. at 10-13; Dkt. No. 35: Singh Reply Br. at 6-7.)

To demonstrate that Sachdev's claim as to the AOL email is time-barred, Singh relies on Sachdev's allegations that "Cr1m1nal Hack3r" emailed him a warning on June 21, 2011, and that his hired expert discovered thousands of attempted hacks on June 22, 2011. (Singh Br. at 9.) Although Sachdev admits that upon receipt of Cr1m1nal Hack3r's email he "lost trust in the privacy of his AOL email . . . and has used it only very rarely since learning of the 2011 hacking" (Am. Compl. ¶ 35), he also states that on June 22, 2011 his hired expert identified only attempted hacks, rather than successful infiltrations.  (See page 3 above.)  Thus, from the facts alleged, as of June 22, 2011, Sachdev knew that someone had attempted to access his AOL account, but the relevant question under CFAA is when Sachdev "discovered that someone had impaired the integrity" of his account(s).  See Sewell v. Bernardin, 795 F.3d 337, 340 (2d Cir. 2015).

Sachdev states that he "first reasonably became aware that Dr. Singh or her agents had actually succeeded" in invading his email account only when he received a copy of Singh's Indian court filing attaching the AOL email. (Am. Compl. ¶¶ 39-40.)  The amended complaint does not state when Singh's filing took place.  The statute of limitations is an affirmative defense, and the

burden is upon Singh to show that Sachdev's claim is untimely. See, e.g., Szymanski v. Local 3, Int'l Bhd. of Elec. Workers, 577 F. App'x 52, 53 (2d Cir. 2014).  "Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises . . . [a statutory bar] as an affirmative defense and it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law." Conopco, Inc. v. Roll Int'l,  231 F.3d 82, 86 (2d Cir. 2000); accord, e.g., Hidalgo v. Johnson & Johnson Consumer Cos., 15 Civ. 5199, 2015 WL 8375196 at *4 (S.D.N.Y. Dec. 8, 2015).  From the face of the complaint, it is not clear that Cr1m1nal Hack3r's warning email or the June 22, 2011 log of attempted hacks made Sachdev aware of impairment to the integrity of his account, and Singh has not presented any evidence as to when she filed the AOL email in the Indian proceedings. Accordingly, Singh's motion to dismiss as time-barred Sachdev's CFAA claim as to the AOL email is DENIED.

### 2.      Sachdev Has Not Alleged "Intent to Defraud"

Singh argues that Sachdev fails to plead "intent to defraud." (Dkt. No. 33: Singh Br. at 17-18.)  Sachdev does not dispute that he has not alleged Singh's intent to defraud, and instead merely argues it is not necessary to do so in order to state a claim under CFAA.  (Dkt. No. 34: Sachdev Br. at 18.)  Intent to defraud, however, is a required element of 18 U.S.C. § 1030(a)(4). At oral argument, Sachdev's counsel agreed to dismissal of this claim.  (See 2/25/16 Oral Arg. Tr.) Accordingly, Singh's motion to dismiss Sachdev's CFAA claims is GRANTED as to Sachdev's claim under 18 U.S.C. § 1030(a)(4).

### 3.      Singh's Remaining CFAA Arguments are Without Merit

Singh argues that Sachdev fails adequately to plead loss or damage.  (Dkt. No. 33: Singh Br. at 3-7.)  As Sachdev's submissions on the issue of loss are sufficient to survive summary judgment (see pages 10-13 above), it follows that they pass muster on a motion to dismiss as well.

CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Courts in this district recognize that computer hacking "compromises the integrity and availability of data and may cause an interruption of computer service." Orbit One Commc'ns, Inc. v. Numerex Corp., 692 F. Supp. 2d 373, 386 (S.D.N.Y. 2010); see also, e.g., United States v. Aleynikov, 737 F. Supp. 2d 173, 192 (S.D.N.Y. 2010). Sachdev alleges that Singh hacked his personal and business email accounts and his business computer network. (See pages 2-4 above.) Further, Sachdev alleges that due to the hacking, he was unable to use his accounts, had to purchase new devices – i.e., that his systems' integrity was impaired –, and had to install a firewall to prevent any malware from continuing to send information out of his computer. Additionally, Sachdev has quantified the costs of assessing the damage and replacing his devices. See, e.g., Bose v. Interclick, Inc., 10 Civ. 9183, 2011 WL 4343517 at *4 (S.D.N.Y. Aug. 17, 2011). Accordingly, Sachdev has sufficiently alleged loss and damage.

Singh next argues that Sachdev fails adequately to plead "access." (Singh Br. at 16-17.) The amended complaint alleges that Sachdev maintained certain information about his personal relationships and professional endeavors in email accounts and on his computer. (See pages 2-4 above.) Some of this information, for example Sachdev's investment in K2, was known only to Sachdev and his agents, and not referenced anywhere but Sachdev's computer files. (See page 4 above.) Other information, such as Sachdev's engagement of a consulting firm to assist with his Malta citizenship application, is alleged to have been known by Sachdev, the consulting firm, and Sachdev's assistant, and again, aside from a single physical copy, to exist only in Sachdev's email. (See pages 3-4 above.) Singh does not dispute that she came to possess this information, and used it in various Indian legal proceedings. (See generally Singh Br.) At this stage, Sachdev's allegations that Singh possessed information known only to a limited number of individuals, and otherwise

available only through his computer or email, are sufficient for the Court to draw the reasonable inference that Singh accessed Sachdev's computer.  Sachdev further alleges that (1) he maintained his passwords as private and was the only authorized user on his accounts (see page 3 above); (2) Singh regularly works with private investigators (see page 2 above); and (3) he was contacted by a hacker-for-hire who suggested that court proceedings in Delhi (where Sachdev and Singh's legal proceedings are taking place) might be the "motto" (motive) for hacking (see page 3 above). Sachdev's additional allegations add color to his claim that CFAA applies to Singh as an "'outside hacker' obtain[ing] information to which [she] never had access." JBC Holdings NY, LLC v. Pakter, 931 F. Supp. 2d 514, 525 (S.D.N.Y. 2013).  Sachdev has sufficiently pled access.

### C.      Sachdev Sufficiently Alleges Tortious Interference With Contract

As an initial matter, Singh moves to dismiss Sachdev's New York law claims under the United Mine Workers v. Gibbs doctrine (Dkt. No. 33: Singh Br. at 1), on the assumption that the federal CFAA claim is dismissed.  Not only has the CFAA claim survived the motions, but Singh fails to acknowledge that the complaint and amended complaint also allege diversity of citizenship between the parties.   Because Sachdev is a citizen of India, and Singh is a citizen of New York (see page 2 above), and the amended complaint alleges that Sachdev has suffered damages in excess of $75,000 (see page 5 above), this Court has diversity jurisdiction over Sachdev's claims.  28 U.S.C. § 1332(a)(2) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . (2) citizens of a State and citizens or subjects of a foreign state.").

Under New York law, tortious interference with contractual relations has five elements: "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the

contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom."  Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 81 (1996); accord, e.g., Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C., 455 F. App'x 102, 104 (2d Cir. 2012).  Additionally, to show causation, a plaintiff must allege that but for the defendant's actions there would not have been a contractual breach.  See, e.g., Key Items, Inc. v. Glob. Jewellery Sols., Ltd., 514 F. App'x 40, 41 (2d Cir. 2013); Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 828 (2d Cir. 1990), cert. denied, 499 U.S. 907, 111 S. Ct. 1109 (1991).

With respect to Beat Muller and Claudia Assandri, Sachdev properly alleges a claim for tortious interference with contract.  First, Sachdev states that he had employment contracts with Beat Muller and Claudia Assandri, both of whom served as executives in his companies.  (Dkt. No. 24: Am. Compl. ¶ 92.)  Second, Sachdev states that Singh knew of these contractual relationships. (Id. ¶ 93.)  Third, Sachdev states that Singh emailed Sachdev's counsel with the intention of disrupting Sachdev's business relationships.  (Id. ¶¶ 93-94 & Ex. F: 8/22/15 Email at 3.)  Fourth, Sachdev states that following Singh's email, Muller and Assandri terminated their contracts with him and resigned, damaging Sachdev and his business enterprises. (Am. Compl. ¶ 94.)  Finally, Sachdev plausibly alleges that by emailing his counsel, threatening court subpoenas, implying that Sachdev was involved in criminal activity, and requesting that Muller and Assandri provide information about their work with Sachdev, Singh induced Muller and Assandri to terminate their contracts.  (Id. ¶¶ 94-95.)

Singh argues that "the proper party to maintain a cause of action would be plaintiff's companies who held the contracts with Claudia Assandri and Beat Muller."  (Singh Br. at 20.)  The amended complaint, however, states that: "Plaintiff had employment contracts with Claudia Assandri who was the Chief Financial Officer of one of Plaintiff's companies and with Beat Muller

who served as the head of another of his companies and a member of the Board." (Am. Compl. ¶ 92, emphasis added.) In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010); see also cases cited at page 15 n.4 above. Thus, the Court accepts Sachdev's allegation that he personally had employment contracts with Muller and Assandri.[8/]

Accordingly, Singh's motion to dismiss Sachdev's tortious interference with contracts claim is DENIED.

### D.   Sachdev Sufficiently Alleges Tortious Interference with Prospective Contractual Relations as to Vipul Garg, but Not as to Peter Metcalf

Under New York law, a claim for tortious interference with prospective contractual relations has four elements "(1) [plaintiff] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006).

Additionally, under New York law, "where a suit is based on interference with a nonbinding relationship, the plaintiff must show that defendant's conduct was not 'lawful' but 'more culpable.'" Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 362 (2004). A defendant interferer's conduct is not considered "more culpable" if the means employed are not "wrongful." Id., 3 N.Y.3d at 191, 785 N.Y.S.2d at 363. Wrongful means are defined as including

---

[8/]   If it should become clear through discovery that the employment contracts were with Sachdev's companies, not Sachdev, there will be Rule 11 implications.

"physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." Id. (quotations omitted).  "The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort.  Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." Carvel Corp. v. Noonan, 3 N.Y.3d at 190, 785 N.Y.S.2d at 362.  The New York Court of Appeals recognizes an exception to this rule, where a defendant acts "'for the sole purpose of inflicting intentional harm'" on the plaintiff.  Id. (quoting NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc., 215 A.D.2d 990, 990, 628 N.Y.S. 2d 408, 410 (3d Dep't 1995), aff'd, 87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996)).

        Sachdev alleges that he had business relationships with Vipul Garg and Peter Metcalf (see pages 5-6 above), and that Singh was aware of these relationships (Am. Compl. ¶ 101).  Singh's knowledge of Sachdev's professional relationships with Garg and Metcalf also is implied by her emails to each of them.  (See pages 5-6 above.)  Sachdev further alleges that Singh acted solely to cause intentional harm (Am. Compl. ¶¶ 20, 73, 81), misrepresented her legal authority (id. ¶¶ 70, 77), and made "libelous implications that [Sachdev had] engaged in criminal and deceptive acts" (id. ¶ 80).  At this stage, Sachdev's allegations of libel and misrepresentation are sufficient to establish that Singh's actions not only were wrongful and thus more culpable, but also were part of a "personal vendetta" (see page 2 above), for the sole purpose of inflicting intentional harm.  Lastly, Sachdev alleges that Singh's emails injured Sachdev in that they "disrupted business relations" (id. ¶ 72) with "Garg and others" (id. ¶ 103).  Thus, Sachdev has sufficiently alleged that Singh tortiously interfered in his prospective relationship with Garg.

        Singh argues that Sachdev fails to allege any damage as to his relationship with Metcalf.  (Dkt. No. 33: Singh Br. at 22.)  The Court agrees.  There is no reference in the amended

25

complaint as to how (or whether) Sachdev's relationship with Metcalf was damaged by Singh's interference.  (See generally Am. Compl.)  Accordingly, Singh's motion to dismiss is <u>GRANTED</u> as to Sachdev's claim for tortious interference with his prospective relationship with Metcalf, and <u>DENIED</u> as to Sachdev's claim for tortious interference with his prospective relationship with Garg.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Singh's motion to dismiss (Dkt. No. 29) is <u>GRANTED</u> as to Sachdev's CFAA claim under 18 U.S.C. § 1030(a)(4), and his tortious interference with prospective contractual relations claim as to Peter Metcalf.  In all other respects, Singh's motions (Dkt. Nos. 29 & 41) are <u>DENIED</u>.


SO ORDERED.

Dated:        New York, New York
              February 26, 2016


_____
**Andrew J. Peck**
United States Magistrate Judge


Copies ECF to:  All Counsel